IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SANDRA W.,[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 7:18–CV–00406 |
| | ) |
| COMMISSIONER, Social Security Administration | ) |
| | ) |
| **Defendant.** | ) |

### REPORT AND RECOMMENDATION

Sandra W. ("Sandra") filed this action challenging the final decision of the Commissioner of Social Security finding her not disabled and therefore ineligible for disability insurance benefits (DIB) under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; R. 10–15. Sandra alleges that the Administrative Law Judge ("ALJ") erred at Step Two of the sequential analysis by finding that she did not have a medically determinable severe impairment and thus was not disabled. I conclude that substantial evidence supports the ALJ's decision. Accordingly, I **RECOMMEND DENYING** Sandra's Motion for Summary Judgment (Dkt. 12), **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 14), and **DISMISSING** the case from the Court's docket.

### STANDARD OF REVIEW

The court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Sandra was not disabled under the Act.[2] Mastro v.

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability

Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[ ] to an existing administrative record and ask[ ] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

On November 17, 2014, Sandra protectively filed an application for a period of disability and disability insurance benefits, alleging disability since January 1, 2002. R. 10. Because Sandra's date last insured is March 31, 2006, she must establish disability on or before this date. R. 12. Sandra alleged that her disability derived from Ehlers Danlos Syndrome,[3] fatigue, depression, chronic pain, status post right knee surgery, status post right elbow surgery, trouble getting motivated, difficulty getting things done, and tendon ruptures. R. 213. The state agency denied the claim initially and on reconsideration. R. 71–77, 83–93. ALJ James Grimes convened

---

under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] Ehlers–Danlos Syndrome is a group of inherited disorders that affect connective tissues – skin, joints, or blood vessel walls – and cause overly flexible joints and stretchy, fragile skin. *Ehlers–Danlos Syndrome*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/ehlers-danlos-syndrome/symptoms-auses/syc-20362125 (last visited February 11, 2020).

a hearing on May 2, 2017, at which Sandra and a vocational expert appeared and testified. R. 21–64.

On July 3, 2017, the ALJ issued a decision analyzing Sandra's claims under the familiar five–step process[4] and denying her claim for benefits. R. 10–20. The ALJ found that Sandra met the insured status requirements of the Social Security Act through March 31, 2006 and had not engaged in substantial gainful activity since the alleged onset date of January 1, 2002. R. 12. At Step Two, the ALJ determined that Sandra suffered from the medically determinable impairment of depression. Id. However, the ALJ determined that Sandra's depression was not a severe impairment which would affect her ability to work. R. 12–13. The ALJ concluded that, therefore, Sandra was not under a disability between the alleged onset date and date last insured of March 31, 2006. R. 15. On June 27, 2018, the Appeals Council denied Sandra's request for review. R. 1–5.

## ANALYSIS

Sandra alleges that substantial evidence does not support the finding that Sandra had no severe impairments or that her statements concerning the intensity, persistence, and limiting effect of her symptoms were not entirely consistent with the medical evidence and evidence of record.

**A. Medical History**

---

[4] The five–step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

Sandra complained of suffering from depression throughout her life. R. 1032. In May 2001, seven months before Sandra asserts her disability began, Sandra sought treatment from Linda Brunson, M.D., at the Lewis–Gale Clinic, claiming that she felt "quite depressed" and moody. Id. Dr. Brunson diagnosed Sandra with depression and prescribed Prozac. R. 1033. At a June 12, 2001 follow–up appointment, Sandra described herself as feeling "dramatically better" on Prozac. R. 1031. Additional records from 2011 to 2013 from the Lewis–Gale Clinic detail Sandra's issues with obesity and changing from taking Prozac weekly to once–a–day. R. 1025–1030. Progress notes by Ella Youngblood, M.D., from Roanoke Family Medicine, Inc. from February 2, 2006 and December 18, 2006 show that Sandra maintained a normal psychiatric state, including her mood and affect. R. 412–413. On November 4, 2007, Dr. Youngblood diagnosed Sandra with anxiety and depression and prescribed Cymbalta. R. 411.

From 2009 to January 2013 (well outside the alleged disability period), Sandra received treatment for several medical conditions including elbow pain, foot pain, ankle pain, knee pain, hip pain, osteoarthritis, polyarthralgia, diarrhea, and tendinitis. R. 334–356, 339, 341, 343–344, 346–347, 351–357, 360, 362–365, 373, 375, 522–572, 580, 896–899. Sandra's treatment included multiple surgeries: a right elbow surgery in 2010, a right knee surgery in 2011, a right knee replacement in 2012, and a right knee surgery in 2013. R. 221. Medical reports show Sandra experienced long–lasting issues with knee and hip pain. On March 27, 2011, Sandra described having grating "for years" in the retropatellar region of both of her knees when she sought treatment from Alfred Durham, M.D., for bilateral knee pain. R. 347. On November 21, 2011, Sandra sought treatment from James M. Farmer, M.D., for left hip, bilateral knee, and bilateral foot pain. R. 335. Dr. Farmer noted Sandra's "long history" of pain in her left hip. Id.

4

On February 22, 2013, Sandra visited Emily Doherty, M.D., at Carilion Clinic Clinical Genetics. R. 384. Sandra complained of chronic tendonitis in her feet, knees, hips, back, and shoulders for over eight years. Id. Dr. Doherty diagnosed Sandra with Ehlers–Danlos Syndrome and indicated that she believed that Sandra suffered from hypermobile–type given her joint hypermobility and the presence of piezogenic papules.[5] R. 387. Gretchen Oswald, M.S., assessed Sandra on July 20, 2013 at the Johns Hopkins Hospital with Ehlers–Danlos Syndrome and described her as having a medical history that included depression, joint hypermobility, torn left gluteus medius muscle, degenerative disk disease and moderate–to–severe arthritis of the back. R. 398–399.

In 2015, state agency expert medical consultants Thomas Phillips, M.D., and Jack Hutcheson, M.D., reviewed Plaintiff's records and both found that Sandra did not have a severe medically determinable impairment during the relevant period. R. 65–70, 72–77.

**B. Severe Impairment**

Sandra challenges the ALJ's conclusion at Step Two that she did not have a severe impairment or combination of impairments that significantly limited her ability to perform work–related activities prior to her date last insured. Sandra notes that while she was not diagnosed with Ehlers–Danlos Syndrome until 2013, medical literature documents a link between it and depression and anxiety. R. 317. Sandra asserts that many of her past medical conditions were, in fact, complications caused by Ehlers–Danlos Syndrome before Dr. Doherty diagnosed her with it. These conditions include Sandra's treatment for depression from 2001 to 2003 and in 2007, reports of a chronic history of pain in her right foot and ankle in 2010, elbow surgery in 2010,

---

[5] Piezogenic papules are grouped, white to flesh–colored raised areas of skin tissue that can appear on the foot. They are common and usually asymptomatic, but they are occasionally painful. They have been associated with Ehlers–Danlos syndrome. See *Piezogenic Pedal Papules*, Consultant360, https://www.consultant360.com/article/piezogenic-pedal-papules (last visited February 11, 2020).

report of years of grating of the retropatellar region of both knees in 2011, three surgeries on her right knee from 2011 to 2013, and reports of chronic tendonitis in her feet, knees, hips, back, and shoulders as well as slow wound healing and muscle weakness for eight years in 2013. According to Sandra, substantial evidence does not support the ALJ's findings because he relied only on medical records prior to her date last insured and did not consider later evidence.

An impairment is non–severe when it causes no significant limitations in the claimant's ability to work. 20 C.F.R. §§ 404.1521(a), 416.921(a). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)); McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) ("Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected."). Whether a medically determinable impairment is severe "requires a careful evaluation of the medical findings that describe the impairment(s) and an informed judgment about the limitations and restrictions the impairment(s) and related symptom(s) impose on the individual's ... ability to do basic work activities." SSR 96–3p, 1996 WL 374181, at *2. Additionally, an impairment must last, or be expected to last for a continuous period of at least 12 months to be considered "severe." 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). Sandra bears the burden of proving that she had a severe impairment before her last date insured. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

The ALJ noted that the record contained only minimal evidence during the relevant period which related to any mental condition or impairment that would cause more than minimal limitations in basic work activities. R. 14. For example, in June 2001, one month after Sandra's

6

diagnosis with depression, Sandra indicated that she was feeling dramatically better. Id. See R. 1031. The ALJ gave significant weight to the opinions of the state disability consultants who found Sandra to have no severe impairments. Id. The ALJ found these opinions consistent with Sandra's normal physical examinations and the evidence that her depression remained controlled with medication. Id.

The ALJ then reviewed the four areas of mental functioning or the "paragraph B" criteria, finding only a mild limitation in the area of adapting or managing oneself and no limitation in the areas of understanding, remembering, or applying information; interacting with others; and concentrating, persistence, or pace. Id. The ALJ concluded that because Sandra had no severe impairment or combination of impairments, she was not disabled. R. 15.

Substantial evidence supports the ALJ's decision. While the record reflects that Sandra suffered from depression and some physical ailments, the ALJ found that the record lacked any medical evidence of symptoms that impaired Sandra's ability to work during the relevant time period. See Lafferty v. Colvin, No. 4:13–CV–00049, 2015 WL 156772, at *14 (W.D. Va. Jan. 13, 2015) ("the mere diagnosis of an impairment does not establish that a condition is disabling; there must be a showing of related functional loss.") (internal citation and quotation omitted). The ALJ reasonably relied on the opinions of Dr. Phillips and Dr. Hutcheson, who concluded that Sandra was not disabled.

Sandra's assertions in her brief are insufficient to undermine that substantial evidence supports the ALJ's decision. For example, Sandra writes

> The ALJ erred in finding plaintiff did not have an impairment or combination of impairments that significantly limited plaintiff's ability to perform work–related activities prior to plaintiff's date last insured. The medical records prior to plaintiff's date last insured confirm plaintiff was experiencing depression and fatigue at a level that significantly limited her ability to perform work–related activities as she was sleeping more than she should and had significant difficulty

7

> controlling her emotions and was very moody. (R. 1032). Although plaintiff was not diagnosed with Ehlers–Danlos Syndrome until 2013, as the medical literature documents, depression and anxiety are linked with Ehlers–Danlos Syndrome. (R. 290). As the medical literature also outlines, Ehlers–Danlos Syndrome is "often either not diagnosed or misdiagnosed, and the situation can be extremely frustrating for the patient as well as the physician and other caregivers." (R. 317).

Pl.'s Brief at 12–13. Here, Sandra relies upon a May 11, 2001 examination by Dr. Brunson when she complained of depression and difficulty sleeping. See R. 1032. When Sandra next saw Dr. Brunson on June 12, 2001, Sandra reported that she and her family noticed significant improvement while she took Prozac. R. 1031. Dr. Brunson never commented on the effect depression had on Sandra's ability to work and never concluded that depression "significantly limited" Sandra. While Dr. Brunson noted that Sandra "has some trouble falling asleep," Dr. Brunson never provided any opinion regarded this symptom or even indicated that she was doing more than recounting Sandra's subjective complaints. Certainly, Dr. Brunson does not diagnose Sandra with fatigue that "significantly limited her ability to perform work–related activities." R. 1031; Pl.'s Brief at 12.

Sandra invites the court to rely upon medical literature to associate Sandra's anxiety and mood disorders with her Ehlers–Danlos syndrome because a misdiagnosis or failure to diagnose Ehlers–Danlos Syndrome "can be extremely frustrating." See R. 289–290. Thus, Sandra contends that her Sandra's Ehlers–Danlos Syndrome impeded her ability to work during a window seven to twelve years before her diagnosis. See R. 289–290. Claimant's counsel attempted to weave these ideas together at the May 2, 2017 hearing,[6] but the record does not support Sandra's conclusions. Dr. Doherty diagnosed Sandra with Ehlers–Danlos Syndrome

---

[6] See R. 31 ("But, it's basically our position, judge, that Ehlers–Danlos did not just suddenly appear in 2013. That's just when it was confirmed by diagnosis. But, when you look back through the medical records, it's been there for a long time. And that syndrome and that condition with all these problems along with it, and it started with the depression, you know, began at the time of her alleged onset date...")

when she presented with findings of joint hypermobility and piezogenic papules on her feet. The record contains no evidence that Sandra suffered from such conditions during the relevant time period. R. 387. Similarly, M.S. Oswald[7] found in December 2014 that Sandra had Ehlers–Danlos syndrome because Sandra had a history of spontaneous muscle and tendon tears, skin fragility, and wound dehiscence (separation), as well as atrophic scarring; yet, Sandra does not point to evidence indicating that these conditions also existed during the relevant period. R. 400–401. Further, the determination of disability rests on medical opinions, not medical journal articles. See McKinney v. Barnhart, 52 Fed.Appx. 284, 286 (10th. Cir. 2003). ("We cannot give persuasive authority to an attorney's extrapolation of a medical article to his client's condition.").

Sandra testified that her conditions caused difficulty in thinking straight, exhaustion, chronic pain, the need for frequent breaks, back pain, foot pain, stiff necks, pulled muscles, calf pain, difficult climbing stairs, depression, and physical challenges with pushing a vacuum, mopping, and cleaning baseboards during the relevant time period. R. 44–49. Nevertheless, this testimony, in the absence of medical evidence consisting of signs, symptoms, and laboratory findings during the relevant period, is insufficient to establish that Sandra had a medically determinable impairment prior to her date last insured. Id. See 20 C.F.R. § 404.1508 (2016)[8]; Smith v. Colvin, No. 3:15–cv–246, 2016 WL 1179247, at *4 (E.D. Va. Feb. 22, 2016) (refusing

---

[7] As Defendant notes, Plaintiff incorrectly refers to M.S. Oswald as "Dr. Gretchen Oswald." Because M.S. Oswald is a non-acceptable medical source under the applicable regulations, her diagnosis alone cannot form the basis for finding a medically determinable impairment. Nonetheless, her opinion may provide evidence regarding the severity of any impairments and how those impairments affect Sandra's ability to function. See Social Security Ruling 06–03p, 2006 WL 2329939 (SSA)(Aug. 9, 2006)(applicable in cases filed before March 27, 2017).

[8] The current version of 20 C.F.R. § 404.1508 was reserved by 82 Fed. Reg. 5864, effective March 27, 2017. The version applicable to the ALJ's decision is 20 C.F.R. § 404.1508, "What is needed to show an impairment," effective August 1, 1991 to March 26, 2017. The fact that the ALJ found Sandra's depression to be a medically determinable nonsevere impairment does not challenge the regulation's relevance, because Sandra has not pointed to any medical evidence showing any functional imitations during the relevant time period. See Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir. 1986) (affirming ALJ's classification of impairment as non–severe where diagnosis of condition lacked any corroborating clinical findings).

to review ALJ's assessment of lay opinions where no medical evidence supported the existence of a severe medically determinable impairment).

The diagnosis of Ehlers–Danlos Syndrome in 2013 will not relate back to the relevant period which ended in March 2006. In Bird v. Commissioner of Social Sec. Admin., the Court of Appeals for the Fourth Circuit held that medical evaluations made after claimant was last insured may be relevant to proving disability only if they permit an inference of linkage with the claimant's condition before the claimant was last insured. 699 F.3d 337 (4th Cir. 2012).

The record lacks objective medical evidence to relate Sandra's depression and other conditions during the relevant time period to her diagnosis of Ehlers–Danlos Syndrome. Sandra claims that her records reflect a "history of chronic pain, tendonitis, fatigue, widespread joint hypermobility, spontaneous muscle and tendon tears, skin fragility, and wound dehiscence well before her date last insured." See Pl.'s Brief at 14–15. However, the records on which she relies are dated years after Sandra's date last insured and do not affirmatively document these conditions occurring "well before" March 2006. These records contain Sandra's subjective descriptions of having suffered from these conditions in the general past, but not documentation by practitioners[9] of either a diagnosis or objective confirmation that Sandra suffered from these conditions during the relevant period. See R. 335, 347, 357, 384–385, 387, 398, 400. Similarly, Sandra argues that Dr. Doherty, "noted in 2013" that Sandra "has suffered from chronic tendonitis in her feet, knees, hips, back, and shoulders as well as slow wound healing and muscle weakness since 2005." Pl.'s Brief at 13–14. In fact, Dr. Doherty never "noted" that Sandra "suffered from" these conditions; rather, she merely recorded Sandra's subjective complaints. R.

---

[9] While Dr. Farmer described in 2011 Sandra's "long history" of hip pain, Dr. Farmer provided no indication as to whether this was his own determination or a recitation Sandra's subjective complaints. Further, Dr. Farmer never defined what time period this "long history" encompassed. See R. 335.

10

384. Such evidence falls short of suggesting that Sandra's Ehlers-Danlos syndrome was a disabling condition prior to the date last insured. See Kelly v. Berryhill, No. 5:15–CV–00075, 2017 WL 1194716, at *8 (W.D. Va. Mar. 30, 2017) (claimant's "self–diagnosis and subjective report of symptoms, when not confirmed by the medical evidence, does not provide persuasive grounds to overturn the ALJ's analysis."); Woods v. Colvin, No. 1:14CV00067, 2016 WL 270318, at *6 (W.D. Va. Jan. 19, 2016) ("a doctor's notation of a claimant's subjective complaints does not transform them into clinical evidence") (citing Craig, 76 F.3d at 590, n.2).

Sandra's arguments with the ALJ's conclusion amount to a mere disagreement with and a request that the Court reweigh the evidence which I am not allowed to do. See, e.g., Perkins v. Barnhart, 79 F. App'x 512, 514–15 (3d Cir. 2003) (claimant's "argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."). The ALJ accurately evaluated the limited evidence during the relevant period and gave great weight to the opinions of both state disability consultants, whose opinions were consistent with the record. For these reasons, I find that substantial evidence supports the ALJ's conclusion at Step Two that Sandra did not suffer from a severe impairment or combination of impairments that render her disabled during the relevant period.

### C. Subjective Allegations of Impairment

Sandra argues that substantial evidence does not support the ALJ's assessment of her subjective allegations of impairment because the ALJ failed to make specific findings regarding Sandra's allegations. See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017).

The regulations implementing the Social Security Act require an ALJ to follow a two–step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16–3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16–3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c),

11

416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3; §§ 404.1529(b), 416.929(b) (2017). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16–3p, 2017 WL 5180304, at *4. If the frequency or extent of treatment a claimant seeks is not comparable with the claimant's subjective complaints, an ALJ may find that the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence, as long as the ALJ considers the possible reasons the claimant may not have sought treatment consistent with her complaints. Id. at *9.

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Further, a reviewing court will defer to the ALJ's assessment of a claimant's statements, except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

Substantial evidence supports the ALJ's determination that Sandra's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record. The ALJ noted Sandra's descriptions of her disabilities and the contrasting lack of medical evidence of a severe medically determinable impairment during the relevant period. R. 13–14. Sandra testified regarding her

12

depression during the hearing. The ALJ referred, however, to the medical evidence prior to the relevant period of Sandra's depression and how Sandra improved one month later on medication. Id. The ALJ reviewed Sandra's subjective allegations, but the record generally lacked evidence during the relevant period to corroborate her claims. Thus, I find that substantial evidence supports his conclusion that Sandra's statements concerning intensity, persistence, and limiting effects are not entirely consistent with the record. The ALJ's opinion was thorough and applied the proper legal standard, and I will not re–weigh the evidence.

## **CONCLUSION**

For the foregoing reasons, I **RECOMMEND** that the Court **AFFIRM** the final decision of the Commissioner, **DENY** Sandra's motion for summary judgment, **GRANT** the Commissioner's motion for summary judgment, and **DISMISS** this case from the Court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

    Enter:  February 20, 2020

*Robert S. Ballou*

    Robert S. Ballou
    United States Magistrate Judge