CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 10 2020

JULIA C. DUDLEY, CLERK
BY: H. Beea
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SANDRA W., | ) |
| | ) |
| Plaintiff | ) Civil Action No. 7:18-CV-406 |
| | ) |
| v. | ) |
| | ) |
| ANDREW SAUL, Commissioner of | ) |
| Social Security, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| Defendant | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou,

United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of

fact and a recommended disposition. The magistrate judge filed a report and recommendation

(R&R) on February 20, 2020, recommending that plaintiff's motion for summary judgment be

denied, the Commissioner's motion for summary judgment be granted, and the

Commissioner's final decision be affirmed. Plaintiff Sandra W. ("Sandra") has filed objections

to the R&R and this matter is now ripe for the court's consideration.

## I. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil

Procedure[1] is designed to "train[ ] the attention of both the district court and the court of

appeals upon only those issues that remain in dispute after the magistrate judge has made

findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007)

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

(citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL

9044111, at *2 (E.D. Va. 2009), aff'd, 373 F. App'x 346 (4th Cir.); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'") Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

3

## II. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

### III. Plaintiff's Objections[2]

Sandra makes the following objections to the magistrate judge's R&R: The magistrate judge erred when he (1) concluded that substantial evidence supported the administrative law judge's ("ALJ") conclusion that Sandra did not have a severe impairment or combination of impairments and thus was not disabled; (2) concluded that Sandra's 2013 diagnosis of Ehlers-Danlos Syndrome did not relate back to the period before her date last insured; and (3) concluded that substantial evidence supported the ALJ's determination that Sandra's subjective complaints were not entirely consistent with the evidence of record.

Sandra additionally objects that the magistrate judge erroneously summarized and misconstrued her arguments and erred in concluding that her arguments amounted to a disagreement with the ALJ's conclusion rather than support for her contention that the ALJ's decision was not supported by substantial evidence. However, the only issue before the court on de novo review is whether substantial evidence supports the ALJ's decision that she is not disabled. Sandra's objections to the ALJ's characterization of her arguments will be addressed as part of the review of the ALJ's decision.

#### A. Existence of a Severe Impairment

The parties agree that Sandra was last insured for purposes of Social Security Disability on March 31, 2006 and that in order to be entitled to social security benefits, she had to establish disability on or before that date. She alleged disability beginning January 1, 2002.

---

[2] Detailed facts about Sandra's impairments and medical and procedural history can be found in the R&R (ECF No. 19) and in the administrative transcript (ECF No. 6) and will not be repeated here.

The ALJ found her "not disabled" at the second step of the five-step sequential evaluation.[3] At Step 2 of the evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe," or a combination of impairments that is "severe." An impairment is "not severe" if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). See also SSR 85-28 ("[A]n impairment(s) that is "not severe" must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.")

Basic work activities include the following:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling.

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

---

[3] In assessing a claimant's eligibility for Social Security benefits, the ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or medically equals the criteria of a listed impairment; (4) Whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1, or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Mascio v. Colvin, 780 F.3d 632, 634-635 (4th Cir. 2015). At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. The claimant bears the burden of proof on the first three steps and the burden shifts to the Commissioner on the fifth step. Id.

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1522(b). If an ailment is controlled by medication or treatment such that it does not cause work-related limitations, it is not considered severe. Gross v. Heckler, 785 F.2d 1163, 1165-66 (4th Cir. 1986).

Sandra alleges that prior to 2006, she was disabled by the effects of Ehlers-Danlos Syndrome,[4] with which she was diagnosed in 2013. Even though she was not diagnosed with the syndrome until 2013, she argued to the ALJ that she felt the syndrome had been present since 2001 and it manifested during that time as depression, sleep loss, and irritable bowel syndrome. Sandra argues that the 2013 diagnosis of Ehlers-Danlos Syndrome caused the symptoms she experienced prior to her date last insured. It will be assumed without deciding for purposes of her motion for summary judgment that any symptoms she experienced prior to March 31, 2006 were caused by Ehlers-Danlos syndrome.

**(1) Medical Evidence**

There are very few medical records for the period prior to March 31, 2006. On May 11, 2001, Sandra saw Linda Brunson, M.D., to establish care. Her physical examination was normal and she denied chest pain, shortness of breath, nausea, vomiting, constipation, or diarrhea. She reported being quite depressed, having a hard time controlling her emotions, and being moody. She wanted to sleep more than she should and also reported trouble falling

---

[4] Ehlers-Danlos syndrome is a group of inherited disorders that affect connective tissues — primarily the skin, joints, and blood vessel walls. Connective tissue is a complex mixture of proteins and other substances that provide strength and elasticity to the underlying structures in the body. People who have Ehlers-Danlos syndrome usually have overly flexible joints and stretchy, fragile skin. This can become a problem if they have a wound that requires stitches, because the skin often isn't strong enough to hold them.
https://www.mayoclinic.org/diseases-conditions/ehlers-danlos-syndrome/symptoms-causes/syc-20362125 (last viewed March 6, 2020).

asleep. She had gained weight and believed she was eating too much in order to soothe. She said she had periods of depression her whole life, but it had become worse during the last year. She had never been on medication. Dr. Brunson prescribed Prozac. R. 1032-1033.

Sandra returned to see Dr. Brunson on June 12, 2001, and reported feeling dramatically better on Prozac. Her family and children had noticed a difference and she felt better all around. She had some side effects from Prozac and Dr. Brunson switched her to taking it once a week. R. 1031.

On July 19, 2001, Sandra said she did not like taking the Prozac once a week because she did not feel as good, so she went back to taking it daily. Her objective examination was normal. R. 1030. On October 24, 2001, her physical examination was normal and there is no mention of depression. R. 1029.

In July 2003, she complained about a plantar wart on the underside of her right toe which was treated with liquid nitrogen. She also had a cyst on her back that was not bothering her, although it had once become red and swollen prior to draining. A physical examination was normal. R. 1028.

In September 2003, she was seen for vaginitis and the doctor noted that she had fibrocystic breasts. R. 1027. On December 24, 2003, Sandra had the cyst on her back excised. R. 1025. On February 2, 2006, Sandra underwent to an examination at Roanoke Family Medicine. The examination was normal, including normal gait and station, range of motion, stability, muscle strength, and tone. Also, her judgment and insight, orientation, grooming, remote and recent memory, mood, and affect were within normal limits. R. 413. Her blood work also was normal. R. 437.

### (2) Hearing Testimony

At the hearing held on May 2, 2017, Sandra testified that from 2001 to 2004 she worked for a friend's business part-time in the evenings, cleaning office buildings. R. 37-38. She needed to work in the evenings because she never felt good in the mornings. She woke up in pain because her joints would sublux during the night. She also had two children in two years and felt like she never bounced back from being pregnant. R. 38-39. She was always tired and had chronic pain. When she would carry her baby up stairs on a hot day she would see stars. R. 39. She never went to the doctor because she had a long history of being dismissed by doctors. She had complained about multiple muscle injuries, and she was sore, out-of-shape, and overweight. R. 40. She did not see a doctor after 2001 or 2002 because she is not the type of person who goes to the doctor very easily. R. 42. In 2001, she could not leave the house in the morning because she had irritable bowel syndrome and could not be far from the restroom until later in the day. R. 43.

From 2002 through 2006 it was difficult for her to think straight and make decisions. R. 44. She spent her time taking care of her children and cleaning the house, but she had to take breaks because of chronic pain and feeling like she had the flu all the time. She also had pain in her back and both feet. R. 45. She had to stop working for her friend because the work was too physically demanding. R. 46-47. She did not seek medical care because she did not want to be accused of being a hypochondriac. R. 47.

### (3) ALJ Determination

In finding that Sandra did not have a severe impairment or combination of impairments prior to March 31, 2006, the ALJ noted that there was minimal medical evidence in the record.

9

R. 14. Her physical examinations were normal during the period and there was no evidence of a medically determinable impairment that had more than minimal limitations on her basic work activities. Id. The ALJ looked at the evidence of Sandra's depression during the period, noting that she first reported being quite depressed, but having a dramatic improvement on Prozac. Id. The ALJ found that the evidence indicated that her depression was controlled with medication during the relevant period and that she had no more than mild limitations. Id.

The ALJ next looked at the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1). The four broad areas are understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. The ALJ found that Sandra had no limitations in the first three areas and mild limitation in the fourth area. Id. The ALJ concluded that because her medically determinable impairments caused no more than a mild limitation in any of the functional areas, Sandra was not disabled. R. 15.

The magistrate judge found that while the record reflected that Sandra suffered from depression and some physical ailments during the relevant time period, the record lacked any medical evidence of symptoms that impaired her ability to work. Thus, substantial evidence supported the ALJ's determination. ECF No. 19 at 7.

In her objections, Sandra argues that the magistrate judge ignored the fact that although she reported to her doctor in June 2001 that her depression improved after she started taking Prozac, she reported continued depression in July 2001. However, a social security claimant must show more than a diagnosis to show that a condition is severe. Berry v. Colvin, No. 3:14-

9859, 2015 WL 1506128 (S.D.W.V. 2015); Caldwell v. Astrue, No. 5:11CV070-RLV-DSC, 2012 WL 2395196 at *3 (W.D.N.C. 2012) (citing Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). She also must show that the ailment significantly limited her ability to do work related activities.

In this case, there is no objective medical evidence to support Sandra's allegation that her depression caused more than a minimal effect on her ability to do work-related activities during the relevant time period. She initially reported having a difficult time controlling her emotions and trouble falling asleep. However, her symptoms improved with medication. Sandra argues that the magistrate judge ignored the fact that she continued to have depression. However, while the doctor did note a continued diagnosis of depression in July 2001, Sandra had said her symptoms had worsened when she took Prozac only once a week, so she went back to taking it daily. R. 1030. There is no further mention of depression in the record until November 2007, when she was prescribed Cymbalta for anxiety and depression. Moreover, nowhere in the record is there evidence that the depression caused more than a mild limitation in her ability to work.

Although at the hearing in 2017 Sandra described other symptoms she had during the relevant time period, such as a frequent need to use the restroom in the mornings, chronic pain, feeling like she had the flu, and pain in her back and both feet, there is no objective evidence in the record related to any of these symptoms. She went to the doctor a handful of times from 2001 through 2006, but did not report any of the symptoms to any health care provider and there is no evidence in the record consistent with her claims of pain or other symptoms.

11

For all of these reasons, upon <u>de novo</u> review, this court concludes that the magistrate judge's determination that substantial evidence supported the ALJ's finding that Sandra's impairments were not severe prior to her date last insured is correct. Sandra's objection to the contrary is **OVERRULED**.

### B. Subjective Allegations

The Social Security regulations provide that when evaluating the intensity and persistence of symptoms such as pain and determining the extent to which the symptoms limit a claimant's capacity for work, the adjudicator first determines whether medical signs or laboratory findings show the person to have a medically determinable impairment that could be expected to produce the symptoms. The adjudicator looks at the available evidence from medical and non-medical sources about how the symptoms affect the claimant. 20 C.F.R. § 416.929(c)(1). The adjudicator also looks at other factors relevant to symptoms, such as a claimant's daily activities; the location, frequency, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication; treatment other than medication for symptoms; and any other measures taken to reduce symptoms. 20 C.F.R. § 416.929(c)(3).

Subjective allegations of pain need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment. <u>Hines v. Barnhart</u>, 453 F.3d 559, 565 n. 3 (4th Cir. 2006). <u>See also</u> <u>Beavers v. Colvin</u>, No. 5:13-CV-00494-D, 2014 WL 4443291, *9 (E.D. N.C. 2014) (citing <u>Mickles v. Shalala</u>, 29 F.3d 918, 929 (4th Cir. 1994)) (finding that ALJ may consider inconsistencies between a claimant's testimony and the evidence of record).

The ALJ in this case concluded that Sandra's statements concerning the intensity, persistence, and limited effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. The magistrate judge found the ALJ's conclusion to be supported by substantial evidence.

Sandra reiterates her argument that she continued to have depression after she started taking Prozac. However, as discussed above, the only evidence in the record from the relevant time period shows that her depression symptoms improved when she took Prozac daily.

Sandra next points to the records of a physician who saw her on February 22, 2013. She told the doctor she had chronic tendonitis beginning in 2005 which started in her feet and progressed to include her knees, hips, back, and shoulders. R. 384. Assuming that she had symptoms of tendonitis as early as 2005, there still is no indication that the ailment caused more than a mild limitation in her ability to work. There is no record of her complaining of joint pain during that time period and musculoskeletal examinations done in February and December 2006 showed normal gait and station, range of motion, stability, muscle tone, and strength. R. 412-413.

The ALJ's determination that Sandra's subjective complaints of severe depression and pain were not supported by objective medical evidence is correct. Accordingly, Sandra's objection to the magistrate judge's finding that substantial evidence supports the ALJ's determination is **OVERRULED**.

## IV. Conclusion

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ's decision is supported by substantial evidence. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: 03 – 10 – 2020

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge